479 So.2d 193 (1985)
HEALTH CARE MANAGEMENT, INC., Appellant,
v.
DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellee.
No. BE-347.
District Court of Appeal of Florida, First District.
November 21, 1985.
Rehearing Denied January 3, 1986.
Robert D. Newell, Jr., and Martha J. Edenfield, of Oertel & Hoffman, Tallahassee, for appellant.
*194 Harden King, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
WENTWORTH, Judge.
Appellant seeks review of an administrative order by which its application for a certificate of need (CON) was denied by the Department of Health and Rehabilitative Services (HRS). We find that no point of reversible error has been presented for our review, and we therefore affirm the order appealed.
Appellant obtained a CON in 1981 for the construction of a nursing home in Lee County, with 78 authorized beds. In 1983 appellant submitted a CON application seeking authorization for an additional 42 beds at the subject facility. HRS indicated its intent to deny the CON application, and appellant then obtained a formal administrative hearing, asserting that a consideration of the criteria contained in § 381.494(6)(c), Florida Statutes, and Rule 10-5.11, FAC, establishes a need for additional nursing care beds in Lee County. Appellant argued that HRS had improperly considered only the limited mathematical bed need methodology specified in Rule 10-5.11(21).
After the presentation of evidence at the administrative hearing appellant submitted a proposed recommended order which included 94 proposed findings of fact. These proposed findings generally embraced appellant's theory that Lee County has a present shortage of nursing care beds thus necessitating the use of distant nursing care facilities, or local acute care facilities, by "medically indigent" Lee County residents in need of nursing care. Suggesting that this circumstance produces adverse consequences with regard to patient cost and the availability of support services for local Medicaid and VA recipients, appellant requested a conclusion that "an exceptional circumstance" of patient out-migration has historically existed in Lee County. Appellant asserted that such a conclusion would warrant the approval of its CON application for additional nursing home beds for Medicaid and VA patients despite the contrary result mandated by the mathematical bed need methodology of Rule 10-5.11(21).
The hearing officer entered a recommended order which noted that Lee County is a sub-district of HRS District VIII for nursing home bed need determinations. Finding that District VIII as a whole has excess nursing care beds and no additional bed need pursuant to the methodology specified in Rule 10-5.11(21), the hearing officer acknowledged appellant's argument with regard to the asserted historical out-migration of Medicaid and VA patients from Lee County. However, the hearing officer expressly found that:
... The record in this cause fails to contain any competent, credible evidence to establish that Medicaid and VA recipients in Lee County have been so historically underserved as to merit the granting of the 42 additional nursing home beds requested ...
The hearing officer further concluded that appellant had not established that additional beds otherwise approved for Lee County would not meet the area need. It was therefore determined that appellant had failed to demonstrate exceptional circumstances which would warrant the granting of the requested CON, and it was thus recommended that appellant's CON application be denied. Appellant filed exceptions to the hearing officer's recommended order, and HRS then entered a final order by which it adopted and incorporated the hearing officer's recommended findings and conclusions, and appellant's CON application was denied.
Appellant urges on appeal that it was entitled to an administrative order which specifically addressed each proposed finding of fact which appellant submitted. Section 120.59(2), Florida Statutes, does provide that if proposed findings have been submitted the agency order "shall include a ruling upon each proposed finding... ." It was indicated in Stuckey's of Eastman, Georgia v. State of Florida Department of Transportation, 340 So.2d 119 (Fla. 1st DCA 1976), that this statutory mandate *195 requires "explicit agency rulings on all findings proposed by a party... ." Accord, Forrester v. Career Service Commission, 393 So.2d 1 (Fla. 1st DCA 1980). However, this requirement necessitates a specific ruling only as to such proposed findings as are pertinent and which are not subordinate, immaterial, or unnecessary. See Forrester v. Career Service Commission, 361 So.2d 220 (Fla. 1st DCA 1978); see also Wong v. Career Service Commission, 371 So.2d 530 (Fla. 1st DCA 1979). Furthermore, the failure to explicitly address a proposed finding would require reversal of the agency action only when such failure has the effect of impairing the fairness of the proceeding or the correctness of the action. See Parekh v. Career Service Commission, 346 So.2d 145 (Fla. 1st DCA 1977); see generally Adult World Inc. v. State of Florida Division of Alcoholic Beverages and Tobacco, 408 So.2d 605 (Fla. 5th DCA 1982); § 120.68(8), Florida Statutes.
In the present case appellant's position below was predicated upon the contention that an historical and continuing out-migration of Medicaid and VA patients in Lee County produced exceptional circumstances warranting the granting of a CON for additional nursing care beds. The hearing officer's recommended order, which was adopted by the agency, expressly found that the record evidence did not establish the asserted historical underservice of Medicaid and VA recipients in the county, or that additional beds otherwise approved would not sufficiently serve local needs.[1] The final order thus clearly reveals the agency rationale and provides an adequate written foundation for appellate review as required by McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977), and Schomer v. Department of Professional Regulation, Board of Optometry, 417 So.2d 1089 (Fla. 3d DCA 1982). The agency's explicit ruling, which is not now challenged, renders appellant's further proposed findings subordinate, immaterial, and unnecessary. The absence of a specific ruling as to these subordinate proposals has not been shown to have impaired the fairness of the proceeding below or the correctness of the agency action, and does not constitute reversible error.
The order appealed is affirmed.
ERVIN, J., concurs.
ZEHMER, J., dissents with written opinion.
ZEHMER, Judge, dissenting.
I must respectfully dissent from the affirmance of the appealed order. It is my opinion that the hearing officer failed to properly address the proposed findings of fact submitted by appellant as required by section 120.59(2), Florida Statutes (1983). The majority correctly notes in footnote 1 that the statement in the hearing officer's recommended order disposing of appellant's proposed findings of fact is inadequate to discharge the agency's duty of explication. Island Harbor Beach Club, Ltd. v. Department of Natural Resources, 476 So.2d 1350 (Fla. 1st DCA 1985). I am unable to agree, however, with the majority's conclusion that the proposed findings *196 of fact were properly rejected by the hearing officer as subordinate, immaterial, and unnecessary.
The hearing officer expressly recognized that appellant does not contest the results of the application of the bed-need methodology contained in rule 10-5.11(21), Florida Administrative Code, and argues only that the results of the formula should not be applied in this instance because exceptional circumstances exist in Lee County that warrant a departure from those mathematical guidelines. These exceptional circumstances were the primary factual issues tried to the hearing officer. Appellant's proposed order contains some ninety-four recommended findings of fact, the majority of which relate to the exceptional circumstances sought to be proven by appellant. For example, the proposed findings recite that appellant had offered to condition the certificate of need applied for by limiting the use of the forty-two additional nursing-home beds to Medicaid and VA patients because such patients historically were unable to obtain timely admission to nursing homes in Lee County reasonably near and convenient to their homes; that Frances Clay, whose primary job and responsibility is Medicaid nursing-home placement in Lee County, identified extensive statistical information concerning the placement of such patients in nursing homes and testified to such a lack of beds that the nursing homes would selectively choose between patients and turn down those having the most severe illnesses, making it so difficult to immediately place patients most in need that she reads the obituaries every morning to see if there is a vacancy; that Ms. Clay has been compelled to resort repeatedly to out-of-county placements because of extended waiting periods, placing patients seventy to one hundred miles away in St. Petersburg and Tampa; and that Ms. Clay has not been able to place patients within forty-five days of receiving their applications. Jorge Crues, chief of the Home Health Service Unit and coordinator for the Community Nursing Home Program for the Veterans Administration center at Bay Pines, testified that he processes applications for nursing home placement for veterans who have been hospitalized in a VA facility but no longer require hospitalization, that the cost to the government to maintain such a veteran in a nursing home is substantially less than to maintain that individual in the hospital, and that the lack of available nursing-home beds in Lee County had caused significant delays in placing such veterans in nursing homes, which he illustrated by reference to specific examples. Similar testimony and evidence received through other witnesses is detailed in the proposed findings of fact and shows prolonged waiting lists for admission by Medicaid and VA patients to nursing homes in Lee County and the substantial extra cost being incurred by the government for payment of hospital expenses for such persons while awaiting admission to nursing homes. Proposed finding of fact 56 states:
The testimony of Crues, Clay, Merrill, and Sword, together with an analysis of Petitioner's Exhibit 9, supports the following findings:
a) Presently, the only mechanism available for the placement of Medicaid and VA long-term patients originating in Lee County, is 1) to place them out of county if they don't want to wait an inordinately long time to be placed, or 2) wait until a patient dies and a bed becomes available.
b) Between April and October, 1983, inclusive, 233 applications were received from Medicaid patients for placement in a nursing home. Only 181 could be placed in Lee County in the same month they applied. Of the 181 patients that were placed, 18, or 10%, had to be placed out of county. On a monthly basis in 1983, when the number of applicants not placed is added to the number of patients placed out of county, and the total is compared to the number of applications received, it shows that on the average 30% of the patient applicants each month either will not be placed, or will be placed out of county. This trend is consistent for the randomly selected months in 1981 *197 and 1982 on Petitioner's Exhibit 9. Furthermore, the average of the median waiting period for the randomly selected months in 1981, 82 and 83 was between 18 and 28 days. (See Petitioner's Exhibit 9).
c) The cost to the community of not making a sufficient number of nursing home beds available to the medically underserved and indigent is unnecessarily excessive in Lee County. Consider, for example, the median waiting time of 21 days for September, 1983. Even if only one-half of the 27 patients applying in September waited 21 days, then the Medicaid cost at Lee Memorial would be measured by multiplying the 283 total patient days by the daily hospital Medicaid rate at Lee Memorial of $340, or $96,220. If nursing home beds had been available to those same 13.5 patients after qualification of the applicant, payment for those same 283 days would have been at the rate of $40 to $65 maximum per day. The difference between $18,395 (reimbursement at $65) and $96,220 (reimbursement at $340) represents a $77,825 potential savings to the health care system and taxpayers for one month.
Other proposed findings dealing with the need for family support and the adverse effect of placing elderly Medicaid and VA patients in nursing homes located far from the family home are also set forth. There are proposed findings based on the testimony of an apparently qualified expert interpreting statistical information to establish that often within months after opening new nursing homes in Lee County nursing-home beds become even less available for Medicaid than for private-paid patients and that once nursing home occupancy reaches a level of ninety-three percent patients are forced to be placed out of the county, which usually means that the Medicaid and VA patients, rather than private-pay patients, must be so placed.
It will serve no useful purpose to discuss additional proposed findings of fact. The foregoing examples more than suffice to demonstrate the relevance and materiality of the proposed findings to appellant's claim that extraordinary circumstances exist in Lee County which justify departure from the mathematical formulae provided in the HRS rules containing bed-need guideline methodologies. As I view it, these proposed findings of fact can be treated as wholly irrelevant or as subordinate, immaterial, and unnecessary only if approval of beds in excess of the number computed under the bed-need methodologies set forth in the rules cannot be justified by extraordinary circumstances. Not even HRS has gone so far as to take the position that extraordinary circumstances cannot justify additional beds. The hearing officer received this evidence as relevant and material to the issue. Accordingly, he should have ruled whether the evidence proved these facts.
For these reasons, therefore, I would reverse the order and remand for further proceedings, with directions that the hearing officer accept or reject the proposed findings of fact with more specificity, as required by section 120.59(2), and rule on the legal sufficiency of the facts so found to establish whether extraordinary circumstances do exist that justify the additional beds applied for by appellant. See Island Harbor Beach Club, Ltd. v. Department of Natural Resources, 476 So.2d 1350.
NOTES
[1] The hearing officer's recommended order also includes a statement that:

To the extent that those proposed findings of fact are not contained in this recommended Order, they have been specifically rejected as being either irrelevant or unnecessary to a determination of the issues in this cause, or as not having been supported by evidence of record.
Such a blanket statement does not facilitate judicial review and does not comport with the rationale of Pelham v. Superintendent of the School Board of Wakulla County, 436 So.2d 951 (Fla. 1st DCA 1983), wherein it was indicated that the agency should delineate which proposed findings are deemed immaterial and which are unsupported by the evidence. We thus find this blanket statement to be inadequate to discharge the agency's duty of explication. However, as did the Third District in Schomer v. Department of Professional Regulation, Board of Optometry, 417 So.2d 1089 (Fla. 3d DCA 1982), we decline to elevate form over substance and we find that the agency order in the present case did, in its entirety, adequately address appellant's pertinent and material proposed findings.